IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA HERRERA, MARIA ALVAREZ, SALVADOR GALLARDO, MARIA VEGA, TARCISIO VEGA, JOSE TASAYCO, OLGA LOAIZA, ESPERANZA J. LOPEZ, MANUAL LOPEZ, JOSE A. LUNA, RUTILIO RIVAS, and CAROLINA RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 87, SERVICE EMPLOYEES INTERNATIONAL UNION, and DOES 1 through 10, inclusive<br><br>Defendant. | No. CV 10-01888 RS<br><br>**ORDER DENYING RENEWED MOTION TO CERTIFY CLASS** |

## I. INTRODUCTION

This case arises out of alleged discrimination against Hispanic union members by officials of Local 87, the local affiliate of the Service Employees International Union (SEIU). The operative second amended complaint (SAC) states representative and individual claims for relief under federal and state law. Plaintiffs previously moved to certify a proposed class of all persons of Hispanic national origin in SEIU Local 87 from 2003 to the present under Rule 23(b)(2) and (b)(3). Class certification was denied, in part because plaintiffs had failed to satisfy prerequisites of commonality,

typicality, and adequacy under Rule 23(a). Plaintiffs now bring a renewed motion for certification under Rule 23(b)(2) only of a proposed class consisting of: all persons of Hispanic national origin in SEIU Local 87 from January 1, 2005 to the present, excepting elected officers of Local 87 or their families or dependents. As the motion largely seeks to relitigate issues the Court has previously adjudicated, it is appropriate for determination without oral argument and was submitted accordingly pursuant to Civil Local Rule 7-1(b).

## II. FACTS

The following facts, detailed in the Court's April 10, 2012, order denying plaintiffs' motion to certify a class, are recounted again here for clarity. *See* Dkt. 102. Plaintiffs are Hispanic members of SEIU's Local 87. The local affiliate has over 3,000 members consisting mainly of janitorial employees working under contracts between the union and building maintenance companies. These companies in turn contract with various buildings in which the union members work. The union, a "labor organization" as defined under Title VII of the Civil Rights Act of 1964, is the duly certified collective bargaining representative for its members and operates a "hiring hall" that facilitates the placement of union members with work opportunities. Plaintiffs have averred that the union's hiring hall is the exclusive means through which members are hired to fill positions with building maintenance companies. *See* Second Amended Compl. ("SAC") at ¶31. The union has provided a contrary explanation of the hiring process: all but one of the maintenance companies operate their own hiring halls, and hire only through the union hiring hall on the rare occasions when they have exhausted their hiring lists. *See* Dkt. 76-4, Declaration of Olga Miranda in Support of Defendant's Opposition to Motion to Certify Plaintiff Class at ¶14. As alleged in the SAC, Local 87 and the maintenance companies have a Collective Bargaining Agreement (CBA) that establishes, among others, rules of seniority governing how union members must be hired, working terms and conditions, and procedures for grievances to be pursued by the union on behalf of its members for employer violations of the CBA.

The SAC alleges that, in or about 2005, plaintiffs perceived a pattern of discrimination against Hispanic members in the leadership of Local 87. In particular, the SAC avers, Local 87 discriminated by: (1) denying Hispanic members employment positions or referring them to inferior

positions; (2) advancing members of certain other ethnicities and national origins in contravention of the seniority rules; (3) failing to pursue grievances against employers on behalf of Hispanic members; (4) failing to hire representatives who would defend the interests of Hispanic members; (5) denying Hispanic members certain rights of union membership, such as the right to attend meetings and to hold union positions; (6) harassing and disparaging Hispanic members in the union hall; (7) providing fewer opportunities for training and support to Hispanic members than those given to non-Hispanic members; (8) requiring Hispanic members to take positions in less preferred locations as a condition of promotion or hiring; (9) and retaliating against those Hispanic members who complained of rules violations. To be clear, there is no suggestion that Local 87 has a formal policy of discrimination. Rather, plaintiffs allege a pattern of discriminatory conduct by the union's leadership. The SAC further avers that union leaders, including president Olga Miranda and vice-president Ahmed Abozayd, have made a number of discriminatory comments that betray the biased manner in which they made decisions. For instance, Miranda allegedly said, "The only [members] I care about are the Chinese and Arabic members," and refused to approve eight positions at a potential employer "because they are all Latino." *See* SAC ¶¶ 36, 61. Similarly, Abozayd allegedly asked a union foreman who had attempted to assist an Hispanic member, "Why are you helping these stupid Latinos[?]" SAC ¶ 58.

The SAC also alleges a number of specific, "illustrative" acts of discrimination against the named plaintiffs. For example, according to the SAC, Miranda and Abozayd actively sought to bar plaintiff Maria Herrera from attaining certain union offices or from attending meetings in retaliation for her complaints about the union's failure to represent Hispanic members in their complaints for discrimination and for her actions as a whistleblower concerning discriminatory enforcement of the CBA. Likewise, the SAC also alleges that when plaintiff Jose Tasayco was passed over for a position then filled by a Middle Eastern man with less seniority, Abozayd told him, "I'm not going to take out an Arab for you," and when plaintiff Salvador Gallardo was fired on a pretextual basis to facilitate the hiring of a Middle Eastern janitor, the union refused to represent him. SAC ¶¶ 50-51.

According to the SAC, each of the named plaintiffs filed charges of national origin discrimination against Local 87 with the United States Equal Employment Opportunity Commission

("EEOC").[1]  They all received a right-to-sue notice issued on February 2, 2010, as well as a letter in 2007 in which the EEOC determined that there was "reasonable cause to believe that [Local 87] discriminated against [plaintiffs] and a class of similarly situated individuals based on their race/national origin, Hispanic."  SAC ¶¶ 65-79.  The plaintiffs also each received a right-to-sue notice from the California Department of Fair Employment and Housing permitting private action under the Fair Employment and Housing Act (FEHA), California Government Code § 12940.

Plaintiffs then exercised their right to sue, and filed this action on April 30, 2010.  The SAC's first and second claims for relief allege that Local 87 violated Title VII of the Civil Rights Act of 1964, by discriminating against the named plaintiffs individually and against the class they represent on the basis of national origin.  *See* 42 U.S.C. § 2000e-2(c).  The third claim for relief, similarly brought on an individual and representative basis, alleges Local 87 violated the California Fair Employment and Housing Act (FEHA), California Government Code § 12940, by discriminating against plaintiffs on the basis of national origin.  The SAC requests actual and punitive damages, declaratory and injunctive relief against the union, as well as attorneys' fees and costs.  Plaintiffs' previous motion to certify a similar class was denied as "fatally overbroad" and for failure to meet Rule 23(a)'s commonality, typicality, and adequacy requirements.  *See* Order Denying Motion to Certify Class and Denying Motion to Dismiss, Dkt. 102 at 16.  Plaintiffs now bring a renewed motion to for class certification proposing that the named plaintiffs (except Maria Vega, Tarcisio Vega, and Jose Luna) serve as class representatives, and plaintiffs' attorneys serve as class counsel.

### III. LEGAL STANDARD

As noted above, plaintiffs seek certification of a class including "all persons of Hispanic national origin in SERVICE EMPLOYEES INTERNATIONAL UNTION LOCAL 87 from January 1, 2005 to the present, excepting the following persons: elected officers of Local 87 or their families or dependents."  *See* Dkt. 109, Notice of Renewed Motion to Certify Plaintiff Class Under F.R.C.P.

---

[1] Notably, the EEOC also entered into a consent decree with ABM Industries, one of the employers to which Local 87 provides union janitorial services, that provided many of the named plaintiffs in this action with injunctive relief from discrimination as well as a monetary recovery to the agency. *EEOC v. ABM Indus.*, No. 09-04593 (N.D. Cal. Sept. 14, 2011) (Dkt. No. 122).

No. Cv 10-01888 RS
ORDER

4

23(b)(2).  It falls to plaintiffs to make a *prima facie* showing that class certification is appropriate. *See In re Northern Dist. of Cal. Dalcon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982) (citing *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1308-09 (9th Cir. 1977)); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).  Certification is only appropriate if a rigorous analysis indicates the prerequisites of Rule 23(a) have been satisfied.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).  Although one recent Ninth Circuit decision has held that "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements," that opinion does not entirely clarify the extent to which district courts must inquire.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) *and Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (1992)); *but see Dukes*, 131 S. Ct. at 2551-52 (satisfaction of Rule 23 "frequently" entails "some overlap with the merits"), *and Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action").  In any case, it remains relatively clear that an ultimate adjudication on the merits of plaintiffs' claims is inappropriate, and that any inquiry into the merits must be strictly limited to determining whether plaintiff's allegations satisfy Rule 23.  *See Ellis*, 657 F.3d at 983 n.8.

To merit certification, a class or subclass must satisfy the requirements of Federal Rule of Civil Procedure 23.  *See* Fed. R. Civ. Proc. 23; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982) (subclass).  Rule 23(a) provides that a class action is available only where: (1) the class members are so numerous that joinder is impracticable; (2) common questions of law or fact exist; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the class interests.  Additionally, plaintiffs must satisfy Rule 23(b)(1), (2), or (3).  *See* Fed. R. Civ. P. 23(b) (requiring that the proposed class qualify as one of three types).  Here, plaintiffs contend that the proposed class satisfies both Rule 23(b)(2), since defendant has allegedly discriminated "on grounds that apply generally to the class" such that class-wide injunctive relief is appropriate.

## IV. DISCUSSION

After plaintiffs first moved for class certification, the Court issued a detailed order denying the motion on the basis that plaintiffs had failed to meet the commonality, typicality, and adequacy requirements of Rule 23(a). The order recognized that "[a]lthough plaintiffs' proposed class is fatally overbroad, should plaintiffs chose to renew their motion and cure the defects identified above, it is certainly possible that some of the kinds of claims they raise could support certification under [Rule 23](b)(2)." Dkt. 102, at 16. The class previously proposed suffered from the problem that after alleging nine different types of discrimination, "plaintiffs [did] not present[] evidence to suggest that all Hispanic member of Local 87 from 2003 to the present have suffered discriminatory conduct in each of the forms alleged." Dkt. 102, at 11. While plaintiffs' renewed motion for class certification narrows the proposed class to only those Hispanic members of Local 87 from 2005 to the present, it remains defective for the same reasons identified in the Court's prior order denying certification. Plaintiffs still "cannot obtain class certification by merely asserting that the alleged interests and injuries are common to the class and the named plaintiffs simply because they are all Hispanic. That argument, though seductively simple, is foreclosed by [*General Telephone Company of the Southwest v.*] *Falcon*." Dkt. 102, at 11 (citing 457 U.S. 147, 157 (1982).

Apparently taking little guidance from the Court's first order denying class certification, plaintiffs continue to "insist that 'all members of the Class have an [*sic*] basically identical interest in nondiscriminatory treatment by the Union, which is the claim of plaintiffs.'" Dkt. 102, at 13 (quoting Mot. for Class Cert., Dkt. 55 at 15); *see also* Renewed Mot. for Class Cert., Dkt. 110, at 25 ("Here, all members of the Class are Hispanics and have basically identical interest in nondiscriminatory treatment by the Union, which is the claim of plaintiffs"). That argument has already been rejected because it "drastically oversimplifies the nature of plaintiffs' many claims, the interests of hundreds of putative class members, and the potential injuries at issue. Class certification does not proceed at such a high level of generality." *See* Dkt. 102, at 13.

Of the evidence previously submitted by plaintiffs in favor of class certification, the Court observed, "[a]lthough it is conceivable that one or more certifiable class exists within the class proposed by plaintiffs, the evidence that the entire class has incurred 'reasonably co-extensive'

claims that correspond with those of the named plaintiffs is very thin." *Id.* Plaintiffs primarily "offer[ed] anecdotal evidence from relatively few named plaintiffs who have allegedly suffered from discrimination under varying circumstances." *Id.* at 6. The prior order notes that "[p]laintiffs' counsel does not appear to have interviewed scores of potential class members to lay the groundwork for certification of such a large group, and rather than tailoring the proposed class to a particular theory of discrimination and harm, as is the usual practice in class action litigation, plaintiffs simply request class adjudication covering all Hispanic members." *Id.* at 10. Plaintiffs "made no effort whatsoever to assess the number of Hispanic members actually exposed to, or impacted by, the alleged discrimination, which according to plaintiffs, takes many different forms." *Id.* at 6.

In denying the first motion for class certification, the prior order observed that "[a]lthough plaintiffs appear to advance diverse theories of harm, including hostile workplace environment, failure to oppose discrimination by an employer, failure to pursue grievances, and breach of duty of fair representation, among others, considered independently, there is currently insufficient evidence in the record to support certification of the proposed class of all Hispanic members on any one of these theories." *See* Dkt. 102. The only evidence beyond anecdotes from the named plaintiffs that was presented in support of the first motion for class certification was "a four-page declaration by a retained statistician which avers that in sixty buildings serviced by Local 87, Arabic- and Chinese-speaking janitors are overrepresented, relative to their representation in the union's membership rolls over all." *Id.* at 6 n.4. While plaintiffs' argued that this demonstrated class-wide discrimination, the statistical evidence was found to be "rudimentary" and far from convincing. *See id.* at 10 n. 5. As it "d[id] not take into account seniority, it provide[d] at most, weak circumstantial evidence of discrimination in referrals." *Id.* at 6 n.4. Furthermore, it was devoid of "any estimation of the number of Hispanic union members involved." *Id.* at 6 n.4. It did not support a determination that every kind of discrimination for which plaintiffs sought certification was commonly experienced by the proposed class of all Hispanic union members.

Since plaintiffs continue, in their renewed motion, to propose a class consisting of all Hispanic members of Local 87 from 2005 to the present, they must also present additional evidence

to show that the *entire* class has suffered discriminatory conduct in *each* of the nine forms alleged. Plaintiffs have produced the following new evidence: (1) the union's membership roster showing the breakdown by race of two new buildings serviced by ABM, each of which employ more Arabic than Hispanic janitors; (2) the sign-in sheets for two ABM buildings previously analyzed by plaintiffs' statistician showing that the percentage of Arabic janitors has increased and the percentage of Hispanic janitors has decreased in the two years since the statistician's report was performed; (3) a union-produced spreadsheet showing that Hispanics are underrepresented as janitors in comparison to their percentage membership in the union at four buildings serviced by ABLE, and Arabic- and Chinese-origin janitors are overrepresented; (4) ABLE-produced sign in sheets for three more buildings at which Hispanic union members are underrepresented; (5) a second declaration from plaintiffs' statistical expert incorporating this new data;[2] (6) an EEOC charge by a Yemeni union member alleging that Yemeni union members are required to pay $5,000 to keep or be hired for jobs with ABM; and (7) a declaration that the union's president, Olga Miranda, made a comment derogatory to Mexicans during a break from her deposition. *See* Renewed Mot. for Class Cert., Dkt. 110 at 11-14, 17.

Another new development is that in opposition to the renewed motion for class certification, defendants have filed a declaration from Ahmed Abozayd, vice president of the union, attempting o explain away the underrepresentation of Hispanic union members as janitors at ABM and ABLE worksites.  Abozayd admits that "[i]t is the practice of some janitorial employers such as ABM to assign employees to openings where the direct supervisor (foreperson) speaks that employee's primary language to ensure that supervisors and janitors can communicate with each other." *See* Declaration of Ahmed Abozayd in Support of Opposition to Plaintiffs' Renewed Motion for Class Certification, Dkt. 125-1 at 2.  Plaintiffs contend the current CBA requires the union to ensure that janitorial employers such as ABM and ABLE hire its members based on nondiscriminatory criteria,

---

[2] Defendants criticize plaintiffs' statistics for being based on only seven of the approximately seventy-four ABM buildings and only five of the approximately one hundred ABLE buildings. Plaintiffs' statistical expert states that he has taken into consideration this small sample size "in the formulas for determining the probability that even these few buildings, of the total, would come up with so few Hispanics." *See* Second Carlson Decl., Dkt. 127, at 4.  His analysis still appears incomplete, however, as it is silent as to the sampling methodology that was used in selecting the twelve buildings analyzed and whether any sampling bias might have affected his results.

whether that hiring occurs through the union's hiring hall or otherwise.  They characterize Abozayd's statement as an admission that the union knowingly allows janitorial employers to utilize discriminatory criteria in hiring union members, in violation of the CBA.

The additional evidence plaintiffs advance in support of their renewed motion for summary judgment strengthens their argument that there may be issues common to a subclass of Hispanic union members (perhaps those who have sought positions with ABM) as to whether the union is liable for allowing certain janitorial employers to deny Hispanic members employment positions on grounds prohibited by the collective bargaining agreement.  It does not, however, address all of the deficiencies noted in the Court's initial order denying class certification or support the certification of a class of *all* Hispanic union members as to *all* nine forms of discrimination alleged.  For example, it says nothing as to whether there are issues common to all Hispanic union members about whether the union has failed to pursue grievances on their behalf.  The class proposed by plaintiffs in their renewed motion remains fatally overbroad and the motion is therefore denied.

## V. CONCLUSION

The motion is denied.  A further case management conference is hereby scheduled for Thursday, May 9, 2013 at 10:00 a.m.

IT IS SO ORDERED.

Dated: 4/1/2013

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE